UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BLAIN LAY

                              Plaintiff,


        v.                                                    **DECISION AND ORDER**
                                                              14-CV-981S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,


                              Defendant.

_____


        1.      Plaintiff Blain Lay challenges an Administrative Law Judge's (ALJ)

determination that he was not disabled within the meaning of the Social Security Act.

(the Act).  On July 19, 2011, Plaintiff protectively filed a Title II application for a period of

disability and disability insurance benefits (DIB), alleging that he had been unable to

work since September 30, 2009, due to herniated and bulging discs in the lumbar spine,

leg and back pain, left foot deformity, and ADHD.  The application was initially denied

on September 20, 2011.  Plaintiff, who is represented by counsel, appeared and

testified at a hearing before ALJ Robert Harvey on December 6, 2012.  The ALJ issued

an unfavorable decision on January 22, 2013, which Plaintiff appealed.

        2.      The Appeals Council granted Plaintiff's request for review.  On September

23, 2014, the Council issued a decision finding that the ALJ failed to evaluate whether

Plaintiff's alleged ADHD was a medically determinable impairment before finding it to be

non-severe.  (R. 6).  The Council concluded that the record did not contain medical

findings "necessary to substantiate the presence of a mental impairment of ADHD."

(Id.).  The Appeals Council adopted the remainder of the ALJ's decision, which included

the findings related to his spine and the ultimate finding of no disability.   (R. 6-7).[1]

Plaintiff commenced this action on November 20, 2014, challenging the Commissioner's

final decision.

3.      On April 14, 2015 and June 15, 2015, respectively, Plaintiff and the

Commissioner filed motions for judgment on the pleadings under Rule 12(c) of the

Federal Rules of Civil Procedure.  (Docket Nos. 7 and 10).  The motions were deemed

fully briefed as of July 6, 2015, at which time this Court took the matter under

advisement.

4.      A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v.

Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the

Commissioner's determination will be reversed only if it is not supported by substantial

evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.

1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is

evidence that amounts to "more than a mere scintilla," and it has been defined as "such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.

2d 842 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v.

Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the evidence

---

[1]  The Appeals Council's decision, dated September 23, 2014, is the final decision of the Commissioner.

must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth

inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.   Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa

v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 404.1520; 416.920.

8.     Although the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146, n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this

inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education and work

experience.   Second, the Commissioner must determine whether jobs exist in the

national economy that a person having the claimant's qualifications could perform.  See

42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f);  Heckler v. Campbell, 461 U.S. 458,

460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ found that Plaintiff met the insured status

requirements under the Act through March 31, 2014 (R. 18),[2] and then made the

following findings with regard to the five-step process set forth above: (1) Plaintiff has

not engaged in substantial gainful activity since September 30, 2009, his alleged onset

date (id.); (2) Plaintiff's discogenic lumbar spine was a "severe" impairment within the

meaning of the Act, but his hallux deformity of the left foot and attention deficit

hyperactivity disorder were non-severe impairments (id.);[3] (3) Plaintiff's impairments do

---

[2] Citations to the administrative record are designated as "R."
[3]  The ALJ found that the record contained no evidence that Plaintiff's hallux deformity (bunion) would satisfy the 12 month duration requirement.  (R. 18).  Regarding Plaintiff's alleged ADHD, the ALJ found that the record contained no formal testing or diagnosis, and that Plaintiff was on no medications for the

not meet or equal the criteria necessary for finding a disabling impairment under the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, with special consideration given to Listing 1.04 (disorders of the spine) (R. 19); (4) Plaintiff is unable to perform his past relevant work (R. 22), but has the residual functional capacity ("RFC") to lift/carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk for six hours in an eight-hour workday, and sit two hours in an eight-hour work day, with occasional limitations in bending, climbing, stooping, squatting, kneeling, balancing, crawling, and pushing/pulling with the upper extremities, and he cannot work in areas where he would be exposed to cold (R. 19);[4] and (5) Plaintiff could perform other jobs that exist in the national economy.  (R. 23).  Thus, Plaintiff was not under a disability, as defined by the Act, at any time from the date of his application through January 22, 2013, the date of the ALJ's decision.  (Id.).

10.    Plaintiff argues that remand is necessary because the ALJ failed to develop the record, which resulted in an RFC that was not based on a medical opinion, and that opportunities to obtain additional medical evidence existed.  "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits

---

condition.  (R. 18).  As noted above, the Appeals Council subsequently found ADHD was not a medically determinable impairment, but affirmed the ALJ's decision otherwise.  (R. 6-7).

[4] The ALJ considered that the limitations did not significantly erode the occupational base of unskilled light work.  (R. 23).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. 404.1567(b).

proceeding.'" <u>Moran v. Astrue</u>, 569 F.3d 108, 112 (2d Cir. 2009) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 508–09 (2d Cir. 2009)).  The "duty to develop the record, together with the treating physician rule, produces an obligation that encompasses the duty to obtain information from physicians who can provide opinions about the claimant." <u>Jackson v. Colvin</u>, No. 13-CV-5655 AJN SN, 2014 WL 4695080, at *17 (S.D.N.Y. Sept. 3, 2014).

    11.    Nevertheless, the "ALJ's obligation is not unlimited." <u>Myers ex rel. C.N. v. Astrue</u>, 993 F.Supp.2d 156, 163 (N.D.N.Y. 2012) (permitting ALJ to rely on claimant's counsel to obtain specific medical information).  To be sure, in certain cases, the record itself provides "a reasonable basis to believe that relevant medical evidence might be available," thereby demonstrating opportunities for development on remand. <u>Spain v. Barnhart</u>, No. 02-CV-4605 (FB), 2003 WL 21254782, at *4 (E.D.N.Y. May 29, 2003) (remanding for consideration of material records that doctor failed to provide before the hearing) (citing <u>Shaw v. Chater</u>, 221 F.3d at 131; 42 U.S.C. § 405(g) (regarding new and material evidence and good cause for failing to produce it earlier in the administrative proceedings)).  On the other hand it would be improper to permit a plaintiff to "simply identify arguable gaps in the administrative record and claim that such gaps are a *per se* basis for remand." <u>Myers ex rel. C.N.</u>, 993 F. Supp. 2d at 163. Indeed, a claimant bears the burden of providing evidence of his disability.  20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled.").

12.    In support of his contention that "it is not clear that the ALJ possessed a complete record," Plaintiff's attorney proposes that the ALJ could have sought an opinion from Plaintiff's primary care provider Monica Fellenz, PA, at Cattaraugus Indian Reservation Health Center, who "had a longitudinal relationship" with Plaintiff.    The Court finds this suggestion unavailing.   To begin with, the record contains treatment notes from Cattaraugus Indian Reservation Health Center for the time period of February 3, 2010 – October 16, 2012, including Plaintiff's visits with PA Fellenz and Corinne Kirst, D.O.  Although, as Plaintiff indicates, the treatment notes do not contain a treating source's opinion specifically related to Plaintiff's functional abilities, "[n]o 'gap' needs to be filled where the ALJ was in possession of 'comprehensive medical notes' from the claimant's treating physician covering the relevant time period."   Wozniak v. Comm'r of Soc. Sec., No. 1:14-CV-00198-GWC, 2015 WL 4038568, at *9 (W.D.N.Y. June 30, 2015) (declining to require ALJ to seek treating physician's opinion where record contained the doctor's treatment notes) (citing Whipple v. Astrue, 479 F. App'x 367, 370 (2d Cir. 2012) (Summary Order)).

13.    Moreover, the record demonstrates that Plaintiff personally requested treating source opinions from both PA Fellenz and Dr. Krist in connection with his disability claim.  (R. 190-191/270-271; R. 273).   On August 9, 2011, in response to Plaintiff's request, PA Fellenz advised: "Pt will need the specialist to fill out his disability form, pt has been seeing with neurosurg for his back," referring to neurologist, Dr. Walter Grand, whom he last saw in September 2010.  (R. 191/271).   Here, the ALJ recognized that PA Fellenz told Plaintiff to ask a specialist to complete the disability forms.  (R. 21).  Accordingly, it was apparent that PA Fellenz would not, or could not,

complete the request, and the ALJ had no duty to recontact her. 20 C.F.R. § 404.1520b(c)(1) ("We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence."). Furthermore, there is no evidence that Plaintiff sought or submitted disability paperwork from Dr. Grand, as directed by PA Fellenz.

14.    In addition, on September 26, 2011, Dr. Krist indicated in her treatment note that Plaintiff "[h]as paperwork from disability re back," yet no treating source opinion from Dr. Krist appears in the record. (R. 273). Neither Plaintiff nor his attorney requested the ALJ's assistance in securing any opinions, despite receiving notice that they could do so. (See R. 72). Nor are any reasons proposed to explain why these opinions are missing. The Commissioner submits that if Plaintiff had obtained favorable medical opinions, they would now appear in the record. Undoubtedly, an ALJ "is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

15.    Likewise, Plaintiff makes the nebulous assertion that "there appear to be records missing from [Plaintiff]'s consultation with *a neurosurgeon*, in which *it was apparently agreed* that [Plaintiff] would pursue surgery." (See R. 319) (emphasis added). PA Fellenz's October 10, 2012 treatment note states: "pt has seen a neurosurgeon who does recommend surgery and pt is now willing to consider surgery, pt does not want to go to pain management for his pain." (Id.). Plaintiff did not name any neurosurgeon in his papers to the Agency, and he does not now suggest the identity of this neurosurgeon. Furthermore, there is no evidence, nor does Plaintiff argue, that he had an ongoing relationship with the unnamed neurosurgeon that would

compel the ALJ to give such an opinion controlling weight.  <u>See</u> <u>Lewis v. Colvin</u>, No. 13-CV-1072S, 2014 WL 6609637, at *5 (W.D.N.Y. Nov. 20, 2014) (finding no error where ALJ "did not pursue something that could not reasonably be obtained—i.e., an opinion from a physician or other treating source whose relationship with [Plaintiff] was such that the opinion, if supported by the record evidence, would be entitled to controlling weight.").

16.    Although not raised as a potential gap, the Court acknowledges a February 3, 2010 treatment note by PA Fellenz, in which she recorded that Plaintiff "has been seen Dr. Clark – Bflo Spine in Orchard Park."  (R. 235).  On August 24, 2011, the Agency requested records from a Dr. Lindsey Clark in Buffalo, NY, for the period January 1, 2010 - present.  A handwritten note on the returned request form provided an Orchard Park, NY address, but states: "9-14-11 we have no such pt in our system," raising the question of whether the Agency contacted the wrong Dr. Clark or specified the wrong time period.  (R. 228).  Nonetheless, Dr. Clark is also not alleged to fall within the treating physician rule, and the ALJ considered Plaintiff's statement to PA Fellenz that Dr. Clark "wanted rehab – too expensive."  Therefore, the Court finds no reversible error.  (R. 21; 235).

17.    Also not argued in Plaintiff's papers, the record reflects that at his hearing on December 6, 2012, Plaintiff testified, "I'm also seeing Dr. Lewis," whom he referred to as an orthopedic surgeon, and that Dr. Krist and Dr. Lewis were "suggesting that I follow through with the surgery."  (R. 48); (<u>see also</u> R. 273, Dr. Krist's September 26, 2011 note, stating "has appt for Dr. Lewis on 9/30/11. 'Second opinion.'").  No treatment notes from Dr. Lewis appear in the record, nor do any references to surgery

recommendations appear in Dr. Krist's notes.  The record does, however, contain a report for an MRI ordered by Dr. Lewis, dated November 23, 2011, which the ALJ reviewed.  (R. 22, 297).  As addressed herein, the 2011 MRI report stated that Plaintiff's back conditions were unchanged from the previous 2010 MRI, on which Dr. Grand based his recommendation against surgery.  (R. 22, 97; see R. 21, 188).  At the hearing, Plaintiff also testified that he had a follow-up visit with Dr. Lewis scheduled for the following month, on January 23, 2013.  (R. 48).  Plaintiff's attorney did not request that the record be left open to receive the additional record (or any missing records), and, ultimately, the ALJ issued his decision prior to the scheduled appointment.  (R. 51). Here, the mere suggestion of recommended surgery at the hearing, which was unaccompanied by supporting details in the record, did not implicate the ALJ's duty to develop the record and does not now warrant remand for further development.  See Garvin v. Barnhart, 254 F. Supp. 2d 404, 412 (S.D.N.Y. 2003) (finding no error where claimant testified at hearing that she had surgery scheduled, but did not provide more details or submit accompanying medical records to ALJ, and where evidence submitted to and reviewed by Appeals Council did not demonstrate anything about the surgery was disabling or would have changed the ALJ's decision).

18.    Furthermore, on September 2, 2014, the Appeals Council notified Plaintiff of its intention to review and adopt the ALJ's findings (R. 106), and informed Plaintiff of his opportunity to submit additional evidence or a written statement about his case. (Id.).  At no time, however, has Plaintiff submitted any additional evidence, nor did he argue to the Appeals Council that the record was incomplete.  (See R. 5, "No comments or additional evidence have been received.").  Thus, the alleged "incomplete" record was

largely a product of Plaintiff's own inaction, for which no explanations have been articulated.   Accordingly, given Plaintiff's "apparent lack of cooperation with regard to the development of the record, Plaintiff cannot now prevail based upon a challenge to the adequacy of that record."   Kratochvil v. Comm'r of Soc. Sec., No. 1:06-CV-1535 LEK/VE, 2009 WL 1405226, at *4-5 (N.D.N.Y. May 18, 2009).

19.     Next, Plaintiff challenges the ALJ's failure to consider why he did not attend a consultative examination.   (See R. 22).   Plaintiff argues the ALJ "could have complied with the [] regulations and determined if [he] had good cause" for doing so. (See R. 152); 20 C.F.R. § 404.1518 (regarding failure to appear and examples of "good reasons").   Certainly, in some cases, Courts have found remand to be appropriate "where the ALJ denies the claimant a meaningful opportunity to offer good reasons for his failure to attend the consultative examination."     Matta v. Colvin, No. 13CIV5290CSJCM, 2016 WL 524652, at *10 (S.D.N.Y. Feb. 8, 2016), citing Antoniou v. Astrue, No. 10-CV-1234 KAM, 2011 WL 4529657, at *17-18 (E.D.N.Y. Sept. 27, 2011).

20.     Here, the Agency requested that Plaintiff undergo a consultative examination, recognizing that there was insufficient evidence to determine whether Plaintiff was disabled.   (See R. 152); 20 C.F.R. § 404.1520b(c).   The record reflects that Plaintiff and his attorney were sent letters with complete information (R. 153/154), but Plaintiff failed to attend his appointment on September 8, 2011.   (R. 157).   The consultative examination was rescheduled for September 16, 2011, and complete information was again mailed to Plaintiff and his attorney.   (R. 155/156).   Furthermore, on September 12, 2011, an Agency representative spoke on the telephone with Plaintiff's attorney and provided the details of the rescheduled appointment.   The report

of contact indicates that Plaintiff's attorney "will communicate this info to the clmt."  (R. 157).   In fact, the attorney also received the explicit warning "that since this is a rescheduled apt that [Plaintiff's] failure to attend could result in a finding of 'not disabled.'"  (R. 157).  Plaintiff again missed the examination, and the record contains no proffered reasons for his absence.  See Antoniou, 2011 WL 4529657, at *17 (remanding for opportunity to explain alleged reasons or submit to examination but noting "[t]his is not a case where plaintiff missed scheduled consultative examinations *without explanation*") (emphasis added).

21.    While the ALJ noted in his decision that Plaintiff "failed to attend a consultative examination," he did not ask Plaintiff about his "good reasons" at the hearing.   Nonetheless, Plaintiff's attorney also did not solicit testimony about Plaintiff's reasons for missing the examinations, nor are "good reasons," or any reasons at all, presented in Plaintiff's papers to this Court.   See Matta, 2016 WL 524652, at *10 ("Where claimants have refused to acknowledge, attend, or cooperate at scheduled consultative examinations or have failed to argue that they had good reasons for not attending such examinations, courts have rejected claims that the ALJ failed to develop the record.") (citations omitted); Stephens v. Astrue, No. 6:08CV0400(GHL), 2009 WL 1813258, at *8 (N.D.N.Y. June 25, 2009) (finding no error regarding lack of consultative examination reports where Plaintiff neither acknowledged that an examination was arranged nor argued that she had a good reason for her failure or refusal to attend); Lewis, 2014 WL 6609637, at *7 (finding Plaintiff's statement that she left the consultative examination because she "did not want to wait" was not a good reason, and ALJ was "not required to give her an opportunity to contradict her prior statement").

Accordingly, in light of the explicit warning to Plaintiff's attorney and the complete lack of proposed explanations for Plaintiff's two absences, there is no cause for remand on this ground.

22.     Despite his failure to attend the consultative examinations, Plaintiff further asserts that, because the record contains no medical opinion and because no treatment notes speak directly to any functional capabilities, the ALJ improperly assessed the RFC based on "bare medical findings."  Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010), report and recommendation adopted, No. 08-CV-828A, 2010 WL 2629821 (W.D.N.Y. June 28, 2010) ("an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings") (citations omitted). Moreover, Plaintiff maintains that this case is not appropriate for "common sense" judgment because MRI findings revealed significant objective evidence of impairment from spinal stenosis and disc bulges.  See id. at *7 ("where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment") (quoting Manso–Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996)). The Second Circuit has previously recognized, however, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion."  Lewis, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (citing Tankisi v. Commissioner of Social Security, 521 Fed. Appx. 29, 2013 WL 1296489 (2d Cir. Apr. 2, 2013).  Additionally, "regulatory language provides ample flexibility for the ALJ to consider a broad array of evidence as 'medical opinions.'"  Sickles v. Colvin, No. 12–CV–774 MAD/CFH, 2014 WL 795978, at *4 (N.D.N.Y. Feb. 27, 2014), citing 20 C.F.R. § 404.1527 ("'statements ...

13

that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' claimant's capabilities, and any physical or mental restrictions").  The Court finds the ALJ properly proceeded to make a disability determination based on the available evidence.   20 C.F.R. § 404.1520b(d) ("When there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether [a claimant is] disabled, we will make a determination or decision based on the evidence we have.").

23.    Here, the ALJ reviewed two reports from MRIs of Plaintiff's lumbar spine. (R. 21, 22).  Regarding the most recent report, dated November 23, 2011, the ALJ discussed findings related to Plaintiff's spinal conditions, and he also recognized "[t]he examiner stated that both of these findings were unchanged since his prior MRI of the lumbar spine dated August 27, 2010." (R. 22, 297).  Elsewhere, the ALJ acknowledged that the 2010 MRI report states the findings were unchanged from a March 25, 2009 MRI.  (R. 21, 186).  The Court further notes that, although the 2009 MRI report does not appear in the record, it predates Plaintiff's alleged disability onset date by six months and was performed before he stopped working.  Accordingly, given that the results from MRIs done approximately one and two years later were considered to be "unchanged," the ALJ reasonably concluded that the MRI evidence fails to support a finding that Plaintiff's spinal conditions were disabling.  See Snell v. Apfel, 177 F.3d 128, 136 (2d Cir. 1999) (explaining that "if [claimant's] mental condition never deteriorated from what it was while she was working, she cannot claim to have become disabled by reason of mental impairment."); Wolven v. Colvin, No. 1:12-CV-1308 FJS/CFH, 2014 WL

4804278, at *7 (N.D.N.Y. Sept. 25, 2014) ("An ability to continue gainful employment while allegedly disabling symptoms are apparent and increasing, without a subsequent worsening, renders later claims of disability disingenuous.") (citing Id.).

24.    In addition, the ALJ discussed other medical records that demonstrate relatively benign findings and support his conclusions.  For example, on September 23, 2010, Dr. Grand found Plaintiff to have excellent leg strength, normal gait and stance, and normal straight leg raise.  (R. 21; R. 188).  As the ALJ recognized, Dr. Grand reviewed the 2010 MRI results and "stated he did not see anything surgical after reviewing the MRI and reported he would not advise surgery."  (Id.).  The treatment record further indicates that Dr. Grand diagnosed "mild spinal stenosis" and a "slight disc bulge" and recommended a steroid injection.  (R. 188).  In addition, a December 15, 2010 treatment note from PA Fellenz states "here for annual physical. pt offers no specific c/o's except that he may have left bunion repair by dr. vona."  (R. 21, 200).  PA Fellenz noted unremarkable findings in the musculoskeletal exam, including "denies back pain."  (Id.).  The ALJ further noted that at a visit with PA Fellenz on August 9, 2011, Plaintiff reported having continuing back pain after receiving the steroid injection, yet he had never followed-up with Dr. Grand.  (R. 21, 191).  He also reviewed a November 16, 2011 treatment note, in which Dr. Krist recorded Plaintiff's history of chronic back pain, but found "No deformity of the joints and spine; normal gaits and ROM; no significant pain or functional limitation."  (R. 22, 292).

25.    Indeed, not all of Plaintiff's physical examinations were entirely unremarkable.  For example, on February 3, 2010, Plaintiff reported continuing low back pain to PA Fellenz, who found mild tenderness to palpation and limited range of motion

in the lumbar spine.  (R. 21, 226).  PA Fellenz also examined Plaintiff for back pain on October 15, 2010, and found decreased range of motion in his back due to pain, but negative straight leg raise and good strength and sensation in both legs.  (R. 22, 320). Similarly, although not discussed by the ALJ, on September 26, 2011, when Plaintiff presented his disability paperwork, Dr. Krist found mild tenderness to palpation of the lumbar spine, limited flexion, and pain with flexion and extension.  (R. 275).  Dr. Krist prescribed pain medication and encouraged Plaintiff to follow-up with a neurosurgeon to discuss pain management.  (R. 275-276).

26.    It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citing Richardson, 402 U.S. at 399); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record."). Accordingly, notwithstanding Plaintiff's assertion that the MRI results demonstrate conditions too severe to warrant common sense judgment, the ALJ was permitted to evaluate them, along with the other medical evidence of record, and to conclude that "there is nothing in the record to support the severity of the symptoms testified to by the claimant."  (R. 20); see Dumas, 712 F.2d at 1553 (ALJ's decision "reflects a complete and detailed recitation of the medical records and reports [ ]; absent from the record is any indication of the severity of [Plaintiff]'s pain") (citing Rutherford, 685 F.2d at 63). The Court finds that the ALJ properly reviewed the available evidence and arrived at a reasonable conclusion regarding Plaintiff's RFC, as permitted by the Regulations.

27.   For the foregoing reasons, and upon a review of the record as a whole, this Court concludes that the ALJ's determination is supported by is free of legal error and supported by substantial evidence.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.


Dated:  June 16, 2016
          Buffalo, New York


                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge